**UNITED STATES of America,**
**Appellee,**

v.

**Charles W. DEATON, Appellant.**

**No. 477, Docket 31147.**

United States Court of Appeals
Second Circuit.

Argued June 8, 1967.

Decided July 28, 1967.

Charles J. Fanning, Asst. U. S. Atty., Southern Dist. of New York (Robert M. Morgenthau, U. S. Atty., and David M. Dorsen, Asst. U. S. Atty., Southern District of New York, on the brief), for appellee.

Archibald Palmer, New York City, for appellant.

Before MOORE, FRIENDLY and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Verdicts of guilty were returned by a jury on both counts of an indictment against Charles W. Deaton, charging him in the first count with fraud committed through interstate communication by wire, 18 U.S.C. § 1343,[1] and in the second count with interstate transportation of fraudulently obtained money, 18 U.S. C. § 2314.[2] Judgments of conviction were accordingly entered from which Deaton appeals.

There was evidence from which the following facts could have been found. The appellant held himself out as the Executive Secretary-Treasurer of International Insurance Company of Nas-

[1.] 18 U.S.C. § 1343 provides:
"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

[2.] 18 U.S.C. § 2314 reads, in pertinent part, as follows:
"Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud * * *

* * * * *

Shall be fined not more than $10,-000 or imprisoned not more than ten years, or both. * * *"

sau, Ltd. In early 1964 he entered into negotiations with one Edward Johnson concerning a mortgage loan of $900,000 to be made by International to the Golden Mortgage & Investment Company, a joint venture composed of Johnson, Robert Pribble, and Harold Dragoo, which planned to use the borrowed funds for the acquisition and improvement of land in Colorado. The appellant demanded a fee of 3% upon delivery of the written loan commitment and 3% at the closing. He agreed, however, to Johnson's request that only 1% ($9,000) be paid on the date of the commitment and that the balance of $18,000 be paid a few days later. This arrangement was made so that Johnson could pay the $18,000 on behalf of the Golden Company from a fee he expected to receive as a broker upon the closing of another loan by International to be made on April 27, 1964 to one C. E. Jesiop.

On April 24th in New York City, the appellant purported to commit International to make the $900,000 loan on May 20th; and he then demanded the first $9,000 installment on his fee. Johnson gave him a check for $1,000 in New York, and Pribble and Dragoo wired $7,968.39 from Colorado that same day. It was this telegraphic transfer of funds, induced by appellant's representations and received by him at the Western Union office in the Empire State Building in New York City, which was the basis for the charges in the indictment. The Government sought to prove at the trial that on April 24th the appellant had no intention of completing a loan from International to the Golden Company because he knew that International could not and would not make it; and in fact no such loan was ever made.

As events developed after April 24th, the Jesiop loan was never actually closed, so that Johnson did not pay the appellant the remaining $18,000 installment on the commitment fee for the loan to the Golden Company, due on April 29th. The appellant put intensive pressure on Pribble and Dragoo to pay the $18,000 or at least a part of it. Dragoo's attorney became suspicious of the appellant and reported the matter to the F. B. I. On May 13th, an F. B. I. agent posing as Dragoo and another agent posing as his attorney met with the appellant and pretended to negotiate with him about the transaction. As the date for the commitment fee had passed, they requested Deaton to reinstate the loan commitment in writing in return for their check for $18,000, which Deaton did. He also made misrepresentations about the International Insurance Company and his authority to bind the company in the loan transaction. At the end of this conference the appellant was placed under arrest. During the trial the Government introduced extensive evidence of other misrepresentations by the appellant during the course of the negotiations. Although he was a small shareholder in International, Deaton was never at any time an officer of the company. He also presented to the (F. B. I.) negotiators what purported to be a financial statement of the company showing assets of some $21,000,000 when in fact from the time it was organized in 1961 to the time of the trial in 1966, International's assets never totalled more than $500.

The primary issue at the trial was the appellant's intent at the time he received the $7,968.39 by wire from the joint venturers of the Golden Company. In his opening statement, defense counsel said to the jury:

"Now the question that you are going to have to really decide here is the question of what was Mr. Deaton's intent on behalf of his company * * *. Did he intend to make a certain $900,000 loan available to these people in Colorado who wanted it, or did he not intend to do it. That is the crux of the entire case, and that it what I think the proof will show to you that there was no intention on the part of him or on the part of his company not to perform."

The appellant did not testify, but his counsel again in his closing summation

argued that the appellant intended that International would have actually made the loan and that it was because the Golden Company did not pay the $18,000 installment on the $27,000 due at the commitment, that the loan, scheduled to be closed a week after the appellant was arrested, was not made.

To prove the appellant's fraudulent intent the Government introduced evidence of three similar transactions: the Jesiop, Christensen, and Stuckenberg loan negotiations. In each instance the appellant ostensibly committed International to make a loan, and he pocketed or attempted to pocket the commitment fee, paid to him in advance; but in no case was a loan ever made as agreed. The appellant now contends that evidence of these three transactions was not admissible because they were not acts for which he was charged in the indictment.

█ This court has held, however, in a long line of cases that evidence of similar acts, including other crimes, is admissible when it is substantially relevant for a purpose other than merely to show defendant's criminal character or disposition. See, e. g., United States v. Knohl, 379 F.2d 427 (2 Cir. 1967); United States v. Braverman, 376 F.2d 249 (2 Cir.1967); United States v. Jones, 374 F.2d 414 (2 Cir.1967); United States v. Bozza, 365 F.2d 206, 212–214 (2 Cir.1966); United States v. Byrd, 352 F.2d 570, 574–575 (2 Cir. 1965); United States v. Robbins, 340 F.2d 684, 688 (2 Cir.1965); United States v. Klein, 340 F.2d 547, 549 (2 Cir. 1965); United States v. Stadter, 336 F. 2d 326 (2 Cir.1964), cert. denied, 380 U. S. 945, 85 S.Ct. 1028, 13 L.Ed.2d 964 (1965); United States v. Marquez, 332 F.2d 162, 166 (2 Cir.1964); United States v. Ross, 321 F.2d 61, 67 (2 Cir.), cert. denied, 375 U.S. 894, 84 S.Ct. 170, 11 L.Ed.2d 123 (1963); United States v. Kahaner, 317 F.2d 459, 471–472 (2 Cir. 1963); United States v. Eury, 268 F.2d 517, 520 (2 Cir.1959); United States v. Feldman, 136 F.2d 394, 399 (2 Cir.1943).

See also Spencer v. State of Texas, 385 U.S. 554, 560–562, 87 S.Ct. 648, 17 L.Ed. 2d 606 (1967); A. L. I. Model Code of Evidence, Rule 311.

█ The majority of courts express their other crimes rule in an exclusory form, that is, evidence of other crimes is not admissible except for a host of purposes. See summary in Spencer v. State of Texas, supra. Because the exceptions are so numerous, it is difficult to determine whether the doctrine or the acknowledged exceptions are the more extensive. Fairbanks v. United States, 96 U.S.App.D.C. 345, 226 F.2d 251, 253 (1955). A minority of courts has adopted the inclusory form of the rule, that is, that evidence of other crimes is admissible except when offered solely to prove criminal character. This form is favored by the commentators and has been recognized and used by this court. See, e.g., United States v. Jones, supra; United States v. Bozza, supra. 70 Yale L.J. 763, 767 (1961); Wigmore, Evidence (3rd ed. 1940) § 216; Admissibility of Evidence of Crimes Not Charged in the Indictment, 31 Oregon L.Rev. 267 (1952). This is largely a matter of approach or emphasis, although the latter would result in a somewhat "broader range of admissibility." Spencer v. State of Texas, supra, 385 U.S. at 561, n. 7, 87 S.Ct. at 652. Whichever method is adopted, the trial judge is required, as with any potentially prejudicial evidence, to balance all of the relevant factors to determine whether the probative value of the evidence of other crimes is outweighed by its prejudicial character. Spencer v. State of Texas, supra, at 561, 87 S.Ct. 648; Kilarjian v. Horvath, 379 F.2d 547 (2 Cir.1967); Utah State Farm Bureau Federation v. National Farmers Union Service Corp., 198 F.2d 20, 33 A.L.R.2d 1186 (10 Cir.1952); United States v. Krulewitch, 145 F.2d 76, 80, 156 A.L.R. 337 (2 Cir.1944) [subsequent proceedings, 167 F.2d 943 (2 Cir.1948), reversed, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949)]; United States v.

Byrd, supra;[3] Uniform Rules of Evi dence, Rule 45; A. L. I., Model Code of Evidence, Rule 303; Wigmore, Evidence (3rd ed. 1940) §§ 29(a), 1904; McCormick, Evidence (1954) § 154 at 319–321.

■ The present case, however, involves no real problem of balancing because in all three of the instances involving highly similar criminal activities, the probative value far outweighs any incidental prejudice to the appellant. In this regard the Jesiop transaction is somewhat distinguishable from the other two because it was not only highly relevant on the crucial issue of criminal intent and as proof of the appellant's system of criminal activity, but it was part and parcel of the same transaction which constituted the offense charged. United States v. Bozza, supra; United States v. Stadter, supra; McCormick, Evidence (1954) § 157, p. 328. The Christensen transaction was plainly admissible on the issue of intent and as showing a similar, contemporaneous pattern of criminal activity. It was also evidence of the fraudulent nature of the agreement to make a loan to the Golden Company because the Christensen commitment added to those of Jesiop and Golden showed that during April of 1964 the appellant had committed International, with assets of only a few hundred dollars, to make loans

totalling more than five million dollars. The Stuckenberg transaction had taken place two years before the others but it was quite similar in nature and revealed elaborate maneuvering comparable to that used in the Golden Company transaction through which the appellant, once he had pocketed his fee after the commitment, put off any actual closing of a loan. All three instances are of course identical with the present case in that no loan was ever made. The defendant made no objection to the admission into evidence of either the Jesiop or Christensen matters; nor did he object to the introduction of the Stuckenberg commitment documents but he did object to testimony by Stuckenberg about the deal. The court limited its use as evidence to the issue of intent and so instructed the jury at the time it overruled the objection and later in its charge. This was entirely correct and it committed no error in admitting the evidence.

The appellant has raised several other points, but they were either raised for the first time on appeal and could not conceivably qualify for consideration as plain error, or were otherwise so insubstantial as to require no discussion.

The judgments of conviction are affirmed.

3. In some recent cases defense counsel have argued that our decision in United States v. Byrd, 352 F.2d 570 (2 Cir. 1965), has held it to be an abuse of discretion for the trial judge to admit evidence of other crimes on the issue of criminal intent on the Government's main case. This is an erroneous interpretation of that decision. There was actually no holding of an abuse of discretion on that issue. In the course of suggesting guidelines for the retrial of that case, we discussed, p. 574, certain factors, apparently not fully heeded on the first trial, which should be considered, and pointed out that, where the probative value of evidence of another similar crime offered by the Government in its main case is slight and the prejudice is substantial, "the better practice would be to sustain the objection to the offer * * * without prejudice to its re-offer in rebuttal, if then warranted." *Byrd* was not a departure from the long adhered-to position of this Circuit in this area of the law of evidence; and, in effect, reiterated that where the pertinent factors have been duly considered, the admissibility of the evidence is a matter in which the trial judge should be allowed a wide range of discretion.