**UNITED STATES of America,**
**Appellee,**

v.

**James BRETTHOLZ and Milton**
**Santiago, Appellants.**

**No. 1097, Docket 73–1895.**

United States Court of Appeals,
Second Circuit.

Argued July 19, 1973.

Decided Oct. 3, 1973.

Patrick M. Wall, New York City, for appellants.

John L. Caden, Asst. U. S. Atty., Brooklyn, N. Y. (Robert A. Morse, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., and L. Kevin Sheridan, Asst. U. S. Atty., of counsel), for appellee.

Before MOORE and OAKES, Circuit Judges and TYLER,* District Judge.

MOORE, Circuit Judge:

James Brettholz and Milton Santiago appeal from judgments of conviction entered after trial by jury in the United States District Court for the Eastern District of New York. The indictment charged appellants and three other persons, Jerry A. Rosenblum, Jory Ira Prince, and Lon M. Posner, in three counts with violations of the federal narcotics laws: Count I charged defendants with knowingly and unlawfully possessing with intent to distribute one quarter kilogram of cocaine, in violation of 21 U.S.C. § 841(a)(1); Count II charged defendants with attempted distribution of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846; Count III charged defendants with conspiring to conceal, possess, and distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). A fourth count, naming appellant Santiago only, charged him with forcibly assaulting, impeding, and intimidating a federal narcotics agent engaged in the performance of his official duties, in violation of 18 U.S.C. §§ 111 and 1114.

Prior to trial, defendants Rosenblum, Prince, and Posner pleaded guilty to Count III, the conspiracy count, and appeared as government witnesses against appellants Brettholz and Santiago.[1] Both appellants were found guilty as charged on the first three counts of the indictment; Santiago was also found guilty on Count IV. Brettholz was sentenced to a term of five years on each of the first three counts, the sentences to

---

* Hon. Harold R. Tyler, Jr., United States District Judge for the Southern District of New York, sitting by designation.

1. Following appellants' trial, Rosenblum and Prince were each sentenced to a term of imprisonment of six months, plus a special pa- role term of five years. Posner was sentenced to a term of imprisonment of eighteen months, plus a special parole term of five years. After sentencing, the trial court, on government motion, dismissed Counts I and II against each of these defendants.

run concurrently, plus a parole term of three years, plus a fine of $1,000 on each count, for a total of $3,000. Santiago was sentenced to a term of five years on each of the first three counts, the sentences to run concurrently, plus a special parole term of three years; he was sentenced on Count IV to a term of imprisonment of three years, the sentence to run concurrently with those imposed under the first three counts of the indictment.

On appeal appellants raise no material issues of fact but argue (1) that reversible error occurred when the trial court permitted the introduction of testimony by co-defendant Posner that Brettholz had sold cocaine to Posner on ten prior occasions; and (2) that reversible error occurred when the trial court instructed the jury not to consider evidence which, appellants allege, tended to impeach the testimony of government witness Posner and supported the testimony of appellants. In addition, appellant Santiago argues (3) that the trial court committed plain and reversible error by failing to instruct the jury on the issue of self-defense with respect to Count IV, the assault count. We reject all three claims urged by appellants and, consequently, affirm the judgments of conviction.

A brief recital of the facts concerning this attempted sale of cocaine is necessary to a determination of the issues raised by appellants.

At trial the government's evidence established that during the last week of July, 1972, after he had been contacted by government informer Gary Kaplan, co-defendant Jerry Rosenblum telephoned co-defendant Jory Prince for the purpose of securing one-half pound of cocaine. Prince in turn telephoned co-defendant Posner, who indicated that he would see whether he could find a source for the narcotic. Several days thereafter Posner contacted appellant Brettholz, informed the latter that he had a prospective purchaser of cocaine, and asked whether Brettholz could supply the drug. Brettholz told Posner to call back later

that week; Posner did so and on that occasion Brettholz indicated that he could supply the half-pound of cocaine, and that he would meet with Posner the following day, August 5, 1972. (Trial Transcript, hereinafter "Tr.", at 326–27).

The next day Brettholz met with Posner at the latter's place of business, a car wash located in Far Rockaway, New York, which was co-managed by co-defendant Prince. Brettholz gave Posner a small sample of cocaine for the latter's customer to "taste", indicating that he would be able to supply only seven, and not eight, ounces of the drug. (Tr. 328–31). Posner then gave Brettholz the telephone number at co-defendant Prince's home in Far Rockaway, instructing Brettholz to telephone him there at 7:30 that evening. (Tr. 331–32). After Prince himself had "tasted" the cocaine sample, he and Posner telephoned Rosenblum, who in turn contacted government informer Kaplan, with the information that the deal would be consummated that evening at the home of Jory Prince. (Tr. 152, 332). Kaplan quickly contacted the federal narcotics agent to whom he informed, Agent Hall, who made plans to be present with other agents and Kaplan in the vicinity of Prince's home that evening.

At approximately 7:30 that night, the various characters in this narrative began to arrive at Prince's house. First to arrive were Posner and Rosenblum, who went up to Prince's upstairs bedroom for conversation. Posner had brought with him a brown shopping bag containing a scale with which to weigh the cocaine to be brought to the house by appellants Brettholz and Santiago; at trial Posner testified that the shopping bag had contained nothing but the scale. (Tr. 400, 433). In addition to the scale, Posner had brought the cocaine sample supplied earlier that day at the car wash by appellant Brettholz. (Tr. 336–37). Next to arrive at the house was government informer Kaplan, who secretly had been waiting in a parked auto with two federal undercover

narcotics agents; Rosenblum went to the parked auto and accompanied Kaplan to the Prince house. All persons again convened in Prince's upstairs bedroom. Kaplan "tasted" the cocaine, expressed approval, and was told to go back to his auto until the full supply of the drug had arrived. (Tr. 165, 178–79). At this same time the pre-arranged telephone call from Brettholz was received at the Prince residence. (Tr. 179, 340). Posner told Brettholz that "everything seemed to be all right, everything looked cool and he should come by." (Tr. 340). Brettholz announced that he would do so after finishing his dinner.

At approximately 9:00 p.m. that evening appellants Brettholz and Santiago arrived at the house. The two men immediately went to the upstairs bedroom to confer with co-defendants Rosenblum, Posner, and Prince. (Tr. 341–43). After expressing concern at the number of autos parked outside, announcing that the cocaine was still in their auto, and looking around the house to chart an escape route just in case something went wrong (Tr. 185, 189), Brettholz, accompanied by Santiago, went back to their auto, to return to the house a few minutes later with the cocaine. Upon their return, Santiago positioned himself downstairs at the front door while Brettholz took the cocaine to the upstairs bedroom. (Tr. 190–91). Brettholz asked Rosenblum if he was the buyer; answering in the negative, Rosenblum then went outside to get the "purchaser," government informer Kaplan. Rosenblum and Kaplan re-entered the house and were promptly searched for weapons by appellant Santiago, who was still keeping his vigil at the front door. (Tr. 127–28). Once upstairs Kaplan "snorted" or sampled the cocaine which Brettholz had brought, expressed satisfaction with the deal, and left the house, ostensibly to go to his auto for the purchase money. (Tr. 464).

Back at the auto, Kaplan informed the agents that the cocaine had arrived. At this point Kaplan and agents Hall and Lightcap went to the house. Lightcap waited outside. Santiago, still standing watch at the front door, latched the door after Kaplan and Agent Hall had entered, and admonished Kaplan for bringing others to the house against orders. (Tr. 467). Santiago, using colorful expletives to make his point, further warned Kaplan and Hall that nothing had better go wrong because "We f - - - people that f - - - us." (Tr. 467). While Santiago was searching Hall for weapons, the latter unlatched the door to allow Agent Lightcap to enter; thereupon, Hall took out his badge, identified himself to Santiago as a federal agent (a fact which appellant Santiago disputes), and announced an arrest. (Tr. 469–70). Santiago responded by throwing a punch at Agent Hall and screaming, "Jimmy, Jimmy," appellant Brettholz's nickname. (Tr. 505). Other agents quickly entered the house and ran to the upstairs bedroom. Having heard all the commotion, defendants Prince, Posner, Rosenblum, and Brettholz went into action upstairs; Brettholz grabbed the cocaine and was seen by Agent Hall to be leaving out of a bathroom window. In the ensuing chaos, Brettholz escaped, only to turn himself in several days later. The other defendants were arrested on the spot.

After the arrests the agents conducted a search of the premises and the surrounding vicinity. A small plastic bag containing seven ounces of cocaine was found on the roof of a garage located directly behind the Prince house. (Tr. 528). The agents also found three small bags of marijuana in a shopping bag stuffed into a drawer of a bureau in Prince's bedroom. (Tr. 537).

At trial both Brettholz and Santiago testified in their own defense, and each supported the other's testimony. In essence, their defense was that they had gone to the Prince house not with the intention of selling cocaine, but for the purpose of buying marijuana from Posner for their personal use. The jury returned a guilty verdict on all counts of the indictment.

Appellants' first argument on appeal is that the trial court committed reversible error by permitting a government witness, co-defendant Posner, to testify that he had bought cocaine from appellant Brettholz on ten occasions within a year prior to the transaction in question. Prior to Posner's testimony the Assistant United States Attorney made an offer of proof to the trial court as to what Posner would testify, i.e., that Brettholz had sold cocaine to him on ten prior occasions. The prosecutor asked that the testimony be admitted on the theory that the ten prior sales "show[ed] that there was intent to distribute on the part .of defendant [Brettholz] as opposed to being used for his own personal use." (Tr. 136). The trial court ruled that the offered testimony would be admitted, as it later was over defense objection, on the ground that:

> [I]t is pretty well established that proof of each commission of acts of a similar nature previously and not too remotely, of course, is some evidence of intent in a crime where intent is a necessary factor as it is in this case. (Tr. 137).
>
> \* \* \* \* \* \*
>
> I think the testimony would be admissible for the purpose I have stated a moment ago, that is, to show intent on the part of the defendant Brettholz. (Tr. 138).

Appellants contend that the admission of Posner's testimony was reversible error since, they argue, "there was not and could not be any real issue of intent in the case." (Brief, hereinafter "Br.", at 13). We disagree.

 The law in this Circuit is that evidence of prior similar acts is admissible "for all purposes except to show the criminal character or disposition of the defendant." United States v. Warren, 453 F.2d 738, 745 (2d Cir.), cert. denied, 406 U.S. 944, 92 S.Ct. 2040, 32 L. Ed.2d 331 (1972). See also, United States v. Deaton, 381 F.2d 114, 117 (2d Cir. 1967); United States v. Knohl, 379

F.2d 427, 438 (2d Cir. 1967); United States v. Bozza, 365 F.2d 206, 213 (2d Cir. 1966); McCormick, Evidence § 190, at 447 et seq. (2d ed. 1972). The case law and the legal scholars uniformly indicate that such evidence is admissible if offered to prove knowledge, intent, or design on the part of the defendant; 2 Wigmore, Evidence § 300, at 192–93 (3d ed. 1940); McCormick, *supra*, Evidence § 190 at 449; United States v. DeCicco, 435 F.2d 478, 483 (2d Cir. 1970). In ruling on the admissibility of such evidence, the trial judge is required to balance all of the relevant factors to determine whether the probative value of the evidence outweighs its prejudicial character. Spencer v. State of Texas, 385 U.S. 554, 561, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); United States v. Deaton, *supra*, 381 F.2d at 117. As summarized by one scholar,

> the problem is not merely one of pigeonholing, but one of balancing, on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility.

McCormick, *supra*, Evidence § 190 at 453. *See* United States v. Byrd, 352 F. 2d 570, 574 (2d Cir. 1965).

Appellants place great reliance upon the concurring opinion of Judge Lumbard in United States v. DeCicco, *supra*, and upon opinions from other circuits, for the proposition that evidence of similar prior acts is not admissible unless the defendant himself has first raised the issues of motive or intent. *See* 435 F.2d at 486. Appellants' reliance is misplaced, however, since the cases in this Circuit provide otherwise. *See, e. g.*, United States v. Freedman, 445 F.2d

1220, 1224 (2d Cir. 1971), where we held:

> Evidence of similar acts by a defendant is admissible to prove his knowledge, intent, or design if knowledge, intent, or design "is placed in issue in the case at trial, either by the nature of the facts sought to be proved by the prosecution or the nature of the facts sought to be established by the defense." United States v. DeCicco, 435 F.2d 478, 483 (2 Cir. 1970).

*See also,* United States v. Birrell, 447 F.2d 1168, 1172 (2d Cir. 1971), cert. denied, 404 U.S. 1025, 92 S.Ct. 675, 30 L. Ed.2d 675 (1972); United States v. Egenberg, 441 F.2d 441, 443–44 (2d Cir.), cert. denied, 404 U.S. 994, 92 S.Ct. 530, 30 L.Ed.2d 546 (1971); United States v. Klein, 340 F.2d 547, 549 (2d Cir.), cert. denied, 382 U.S. 850, 86 S.Ct. 97, 15 L.Ed.2d 89 (1965).

■ In the case before us, intent was placed in issue by the defendants themselves in maintaining that they had gone to the Prince house not with the intention of selling cocaine (although the proof overwhelmingly showed otherwise), but with the intention of purchasing marijuana for their own use. Under the circumstances, it cannot be said that the trial court abused its discretion in determining that the probative value of Posner's testimony as to the ten prior cocaine transactions outweighed its prejudicial effect. Inasmuch as the prior acts of Brettholz involved a situation virtually identical to the transaction for which appellants were indicted, and inasmuch as intent was an element of the defense case, there was no error in the admission of Posner's testimony.

Appellants next argue that reversible error was committed at trial when the trial court, pursuant to defense counsel's motion, excluded certain evidence from jury consideration. A statement of the circumstances surrounding the trial judge's ruling will make evident our reasons for rejecting appellants' second argument on appeal.

On cross-examination, government witness Posner, who had already pleaded guilty to the conspiracy count of the indictment, testified that he had taken a scale to Prince's house in a brown shopping bag for the purpose of weighing the cocaine, and that the shopping bag had contained nothing but the scale. (Tr. 393–94). Posner specifically denied that he had also carried marijuana to the Prince house in the shopping bag containing the scale. (Tr. 400–01, 433). Later in the trial another government witness, one of the arresting agents, testified that a search of the Prince bedroom had disclosed three small plastic bags of marijuana, found in a brown shopping bag that was stuffed in the drawer of a bureau. The three small bags of marijuana were marked for identification as Government Exhibits 3, 4, and 5.

Thereafter, the last government witness, a chemist for the Bureau of Narcotics and Dangerous Drugs, testified that his chemical analysis had shown that the plastic bag found on the garage roof near the Prince house contained cocaine, and that Government Exhibits 3, 4, and 5 contained marijuana. Defense counsel, Attorney Gerling, moved to strike all of the chemist's testimony on the ground of relevancy, arguing that the four exhibits (the cocaine plus the three bags of marijuana) had not been sufficiently connected to the appellants. The prosecutor later offered the four exhibits into evidence, and defense counsel objected to all four. The trial court immediately called for a side-bar conference with counsel, seeking clarification regarding defense counsel's position as to the cocaine and three marijuana exhibits. After hearing defense counsel's objections to the admission of the marijuana exhibits,[2] the court admitted the

---

2. The colloquy between trial court and defense counsel (Tr. 572) was as follows:

Miss Gerling: As to Government's Exhibits 3, 4 and 5, the Government has not included them in the indictment, this is not part and parcel of the indictment.

The Court: As I understand it now, Miss Gerling, your objection is to the intro-

cocaine and, pursuant to defense counsel's motion, excluded the marijuana exhibits. The court then addressed the jury as follows (Tr. 573):

> You have heard testimony and reference made to marijuana, three packages of marijuana.

> They have no relationship whatsoever to this case and you are to give no consideration to them whatsoever. In other words, you are to treat them as something you have never heard about here in this courtroom.

It is to be noted that the foregoing matters occurred during the government's direct case, after defense counsel had cross-examined Posner as to whether he had brought marijuana to Prince's house on the night in question. On the defense case both appellants testified on their behalf and, as noted previously, their defense was that they had gone to the Prince house not to sell cocaine, but to purchase marijuana, a defense which defense counsel reiterated in summation.

At the close of the evidence and prior to the summations of counsel, defense counsel requested a jury instruction, granted by the trial court, making it clear to the jury that appellants were not charged with the purchase or attempted purchase of marijuana, but only with the attempted sale of cocaine (Tr. 904):

> MISS GERLING: * * *

> I have one request, and it is so simple I did not bother writing it out. I would like your Honor to so charge the Jury that this is a cocaine case, that my defendants are accused of the intent to sell and distribute cocaine, and not marijuana, that they are not being charged with the purchase or attempted purchase of marijuana.

> The Court: Yes, I will do that.[3]

In its charge to the jury, the trial court carefully discussed each count of the indictment, stressing that the crimes charged related to the drug cocaine; the court made no reference to marijuana in its instructions. After the charge, defense counsel requested a jury instruction "insofar as the marijuana is concerned," (Tr. 1019), which the court denied, with defense counsel taking an exception.[4]

---

duction into evidence of three of the Exhibits numbered 3, 4 and 5 for identification, that is to say their receipt in evidence, as well as to Exhibit number 1 previously marked for identification into evidence; is that correct?

Miss Gerling: Yes, sir.

The Court: So far as your motion is directed or your objection, rather, is directed to the three packages of what has been characterized here as marijuana, your motion is granted, that is your objection is sustained.

It is denied as to the package containing what the chemist has stated is cocaine.

3. The colloquy between defense counsel and the trial court continued as follows:

The Court: Incidentally, your witnesses opened the door to what gave you considerable concern when the trial began. You manifested concern about the possibility of bringing in the question of marijuana so that the Jury might be affected by the fact that they were dealing here with a young defendant or defendants who used marijuana.

Miss Gerling: I was concerned only as to the evidence against my defendants, not to go against the credibility of the witnesses. I was concerned that the marijuana would go into evidence as the cocaine would. That was my concern. We opened the door to the marijuana, yes, but not as a charge in this case. We opened it to go against the credibility of the witnesses in this case. (Tr. 904-05).

\* \* \* \* \*

Miss Gerling: * * * The only instruction I ask [is] for you to remind the Jury that this involves the unlawful intent to distribute cocaine, and not marijuana.

The Court: Of course.

Miss Gerling: Thank you.

The Court: As a matter of fact, as to the offer of sale of marijuana, not only has there been no evidence of it, but it would be contrary to the charges contained in the indictment.

Miss Gerling: Yes, sir. Thank you. (Tr. 908-09).

4. Miss Gerling: * * * [Y]our Honor, I am going to respectfully request that your Honor instruct the jury insofar as the marijuana is concerned.

The Court: To do what?

On appeal appellants argue that, as a result of the trial court's instruction to the jury to disregard the government's marijuana testimony and exhibits (which instruction defense counsel had specifically requested), they were unable to impeach Posner's credibility since they were "deprived of the force of compelling physical evidence that Posner had lied when he denied bringing marijuana to Prince's house." (Br. 25). We find no merit in this contention.

 The language we have quoted from the trial transcript clearly establishes that defense counsel herself requested, and was granted, a court ruling by which the "compelling physical evidence," i.e., the three government marijuana exhibits, were removed from the jury's consideration. The trial court quite properly sustained defense counsel's objection to those exhibits and excluded them, since appellants were not charged in the indictment with any marijuana offenses. Nor did defense counsel ever withdraw her objection to the marijuana evidence.

 Appellants' final contention on appeal relates to Count IV of the indictment, in which appellant Santiago was charged with assaulting federal agent Hall when the latter and government informer Kaplan entered the Prince house through the door being guarded by Santiago. Hall testified that, after identifying himself to Santiago as a federal agent, Santiago punched him and began to holler, "Jimmy, Jimmy," which was appellant Brettholz's nickname. At trial Santiago testified that he could not remember whether Hall had identified himself as a federal agent prior to the commencement of the physical struggle. (Tr. 747–49).

On appeal Santiago argues that the trial court committed error by not instructing the jury on a theory of self-defense since, he argues, in both his trial testimony and in defense counsel's summation, the self-defense theory had been clearly raised. This contention is wholly without merit, for the record shows that (1) Santiago's testimony on direct did not clearly establish that he had assaulted Agent Hall in self-defense; (2) although in summation she alluded to the theory, defense counsel did not request an instruction concerning the self-defense allegation; and (3) defense counsel did not take an exception to the court's failure to give the instruction which she had not requested. Under these circumstances it was not error, and certainly not "plain error," for the trial court to omit a reference to the self-defense theory in its jury charge.

The judgments of conviction are affirmed.

Miss Gerling: Instruct the jury insofar as the marijuana in this case is concerned. The Court: No, I decline to do that.

Miss Gerling: I respectfully except. (Tr. 1019).