**UNITED STATES of America,**
**Appellee,**

v.

**Dominick SANTIAGO,**
**Defendant-Appellant.**

**No. 1280, Docket 75–1179.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 15, 1975.

Decided Jan. 12, 1976.

Certiorari Denied May 19, 1976.

See 96 S.Ct. 2169.

**1132**

Grunewald, Turk, Gillen & Ford, New York City (Raymond B. Grunewald, New York City, of counsel), for defendant-appellant.

David G. Trager, U. S. Atty., E. D. N. Y. (Donald F. McCaffrey, Thomas Goldstein, Sp. Attys., U. S. Dept. of Justice, Jerome M. Feit, David E. Roseberry, Attys., U. S. Dept. of Justice, on the brief), for appellee.

Before GURFEIN, VAN GRAAFEILAND and MESKILL, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

After a jury trial in the United States District Court for the Eastern District of New York, appellant was convicted on three counts of converting union welfare funds (18 U.S.C. § 664), one count of converting union general funds (29 U.S.C. § 501(c)) and two counts of making false statements in welfare fund financial reports (18 U.S.C. § 1027). We affirm.

During the period covered by the indictment (1968–72) appellant was president of Local 3108, AFL–CIO, a New York City labor organization subject to the provisions of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.* Appellant was also the administrator and a trustee of the union's Brotherhood Welfare Fund, a welfare fund within the meaning of the former Welfare and Pension Plans Disclosure Act, 29 U.S.C. § 301 *et seq.*[1]

The assets of the Welfare Fund were under the supervision and control of a Board of Trustees selected from management and labor and were required to be kept separate and apart from the general fund of the union. Employers making payment to Local 3108 on behalf of its members sometimes sent separate checks for the general fund and the Welfare Fund and sometimes sent single checks with notations as to how payment should be applied. The proof, construed most

---

**1.** The Welfare and Pension Plans Disclosure Act was repealed as of January 1, 1975 by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, which provides in part that the repealed Act shall continue to apply to any conduct and events which occurred before January 1, 1975. 29 U.S.C. § 1031(a)(1).

favorably to the government, established that on several occasions appellant willfully diverted monies earmarked for the Welfare Fund into the general coffers of the union.

■ Appellant was convicted for violation of 18 U.S.C. § 664 which provides in pertinent part that "any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another" the funds or assets of a welfare plan which is subject to the provisions of the Welfare and Pension Plans Disclosure Act shall be fined and/or imprisoned. Appellant contends that the general fund of the union does not fall within the meaning of the term "another" as used in this statute. We disagree.

■ The District Court, correctly and without exception, charged that the Welfare Fund was not the asset or property of the union. It belonged to participants in the Fund and their beneficiaries.[2] Diversion of Welfare Fund assets into the union's general fund was a conversion for the benefit of the membership as a whole and differed only in degree from a diversion of such funds into the hands of a smaller group or an individual union member. The legislative history of § 664 clearly indicates that its intended purpose was to preserve welfare funds for the protection of those entitled to their benefits. 1962 U.S.Code Cong. and Admin.News, p. 1532 (H.R.Rep. No. 998). This purpose would be ill-served if such a narrow meaning were ascribed to the term "another" as to exclude the general fund of the union from its scope.

■ Appellant was also convicted on another count of using Welfare Fund money to pay the salary of a union organizer and business agent. Although appellant has included this conviction within his omnibus claims of error, he has advanced no serious arguments to support this inclusion. We are satisfied that this was not the result of oversight. *Cf. Brown v. Bullock,* 294 F.2d 415, 420 (2d Cir. 1961). The checks were drawn upon the Welfare Fund in payment for services rendered to the union. The jury was entitled to find that they represented funds which had been converted to the use of "another."

The Government introduced evidence, uncontroverted by appellant, that he used money from the union's general fund to pay for personal purchases and traveling expenses. This was found to be in violation of 29 U.S.C. § 501(c) which provides that any officer of a labor organization who "embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another" any of the organization's funds or assets shall be fined and/or imprisoned.

■ Appellant concedes that his travel expenses to such varied locales as Switzerland, France and the Virgin Islands "appeared" to be personal in nature but argues that the Government's proof did not sufficiently preclude the possibility of subsequent ratification of these expenditures. Whether there can be ratification of the expenditure of union funds for non-union purposes is a question we need not now decide. *See United States v. Goad,* 490 F.2d 1158, 1166 (8th Cir.), *cert. denied,* 417 U.S. 945, 94 S.Ct. 3068, 41 L.Ed.2d 665 (1974); *cf. United States v. Dibrizzi,* 393 F.2d 642, 645 (2d Cir. 1968). The trial judge instructed the jury to measure appellant's conduct by the test we approved in *United States v. Ottley,* 509 F.2d 667, 671 (2d Cir. 1975), viz, did appellant have a good-faith belief that the funds were being used for union business and that the union had

2. 29 U.S.C. § 302(a)(1) provided as follows:
   The term "employee welfare benefit plan" means any plan, fund, or program which is communicated or its benefits described in writing to the employees, and which was heretofore or is hereafter established by an employer or by an employee organization, or by both, for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death, or unemployment.

properly authorized the expenditures or would properly ratify them. Measured by this test, appellant's conduct was found wanting. We see no error.

■ Although there was evidence that the union was indebted to appellant during the period in question, this did not require that he be absolved of liability for the unauthorized conversion of union funds, *see United States v. Bryant*, 430 F.2d 237, 239–40 (8th Cir. 1970), especially since none of the expenditures was credited against the outstanding indebtedness. A union in financial straits, as Local 3108 was, is entitled to make its own determination of how best to use its limited resources. At most, the indebtedness was an item which could be considered by the jury in determining the reasonable likelihood of ratification.

■ As administrator of the Welfare Fund, appellant was required by 29 U.S.C. § 304 to file annual financial reports. He was found guilty of violations of 18 U.S.C. § 1027 which makes it an offense if, in such document, one "makes any false statement or representation of fact, knowing it to be false, or knowingly conceals, covers up, or fails to disclose any fact the disclosure of which is required by such Act or is necessary to verify, explain, clarify or check for accuracy and completeness any report required by such Act to be published or any information required by such Act to be certified." These findings were based upon substantial understatements of the amount of employee contributions to the Welfare Fund. Appellant could not transfer the responsibility for these understatements to the accountant who prepared the reports because the accountant was not hired to make any audit or to verify the accuracy of the figures with which he was supplied. The trial court properly charged that the Government was required to prove beyond a reasonable doubt that appellant made the false statements knowing the same to be false. *United States v. Ferrara*, 451 F.2d 91, 96–97 n. 10 (2d Cir. 1971). In view of the overwhelming proof that appellant knowingly diverted employee contributions intended for the Welfare Fund, we see little merit in his argument that the evidence did not support his conviction for knowingly understating the amount of employee contributions in the annual reports.

■ On June 24, 1970, appellant attended a compliance conference with representatives of the New York State Insurance Department. These officials advised appellant that expenses which should have been paid out of the general fund were being improperly paid from the Welfare Fund. Appellant agreed to correct this situation and thereafter wrote several letters relative to the proposed corrective measures. Proof of these facts was admitted as bearing upon the knowledge, intent or willfulness with which appellant did the similar acts charged in the indictment. Appellant contends that this was error, because the evidence involved the violation of State regulations rather than the Federal statutes at issue herein. This argument, we think, misses the point. It has long been the law of this Circuit that similar acts may be proved in order to show guilty knowledge. *United States v. Seeman*, 115 F.2d 371, 373 (2d Cir. 1940). Indeed, we have held that evidence of relevant similar acts, including other crimes, is admissible for all purposes except to show defendant's criminal character or disposition. *United States v. Brettholz*, 485 F.2d 483, 487 (2d Cir. 1973), *cert. denied*, 415 U.S. 976, 94 S.Ct. 1561, 39 L.Ed.2d 871 (1974); *United States v. Deaton*, 381 F.2d 114, 117 (2d Cir. 1967); *United States v. Bozza*, 365 F.2d 206, 213 (2d Cir. 1966).

Appellant's concern about the possible disparity in the language of the New York regulations and the Federal statutes is unwarranted. It is the similarity of conduct which determines relevancy, not identity of language in the statutes violated. *United States v. Gocke*, 507 F.2d 820, 825 (8th Cir. 1974), *cert. denied*, 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975); *United States v. Wetzel*, 514 F.2d 175, 178 (8th Cir. 1975). In admitting this testimony, the District Court

did not go outside the "wide range of discretion" accorded to it. *United States v. Feldman*, 136 F.2d 394, 399 (2d Cir. 1943), *aff'd*, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408 (1944); *United States v. Braverman*, 376 F.2d 249, 252 (2d Cir.), *cert. denied*, 389 U.S. 885, 88 S.Ct. 155, 19 L.Ed.2d 182 (1967).

Appellant's brief sets forth a battery of complaints about the trial court's instructions to the jury. However, the lack of any objection below raises a hurdle which is not surmounted by appellant's claim of "plain error." Fed.R. Crim.P. 30; *United States v. Pinto*, 503 F.2d 718, 723 (2d Cir. 1974); *United States v. Indiviglio*, 352 F.2d 276 (2d Cir. 1965), (*en banc*), *cert. denied*, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966); *United States v. Projansky*, 465 F.2d 123, 135 (2d Cir.), *cert. denied*, 409 U.S. 1006, 93 S.Ct. 432, 34 L.Ed.2d 299 (1972).

■ There was no plain error in the failure of the court to submit to the jury, as a question of fact, the interpretation of the word "another" as used in 29 U.S.C. § 501(c) and 18 U.S.C. § 664. Statutory construction is for the court, not the jury. *United States v. Guterma*, 281 F.2d 742, 751–52 (2d Cir.), *cert. denied*, 364 U.S. 871, 81 S.Ct. 114, 5 L.Ed.2d 93 (1960); *Caldwell v. United States*, 95 U.S.App.D.C. 35, 218 F.2d 370, 372 (1954), *cert. denied*, 349 U.S. 930, 75 S.Ct. 773, 99 L.Ed. 1260 (1955).

■ The District Court told the jury that the use by appellant of Welfare Fund monies for purposes other than those which the contributors intended meant the same thing as conversion to appellant's own use or to the use of another. While this would not be the language of our choice, we do not find it to be prejudicially erroneous. In calculating the effect of alleged error, we must look at the instructions as a whole. *United States v. Pinto, supra*, 503 F.2d at 724. The charge was clear as to the necessity for a finding of fraudulent intent in connection with the use of the Welfare Fund money. If appellant fraudulently dispersed such funds for purposes unrelated to welfare, he must have put them to his own use or the use of another. Other possible uses do not come readily to mind.

■ Moreover, we find no merit in appellant's argument that, since he personally pocketed no money from the Welfare Fund, the trial court should not have submitted to the jury the issue of conversion "to his own use" under § 664. The phrase "to his own use" is a carry over from the common-law pleading in trover, *Hubbard v. United States*, 79 F.2d 850, 854 (9th Cir. 1935), and does not require a showing that the misappropriation was for the personal advantage of the defendant. *United States v. Harrelson*, 223 F.Supp. 869 (E.D.Mich.1963). One's disposition of the property of another, without right, as if it were his own, is a conversion to one's own use. Conversion to "one's own use" means simply "not to the use of the entruster." *United States v. Goad, supra*, 490 F.2d at 1165–66.

■ Assuming, however, that personal benefit to defendant was a requisite finding under the statute, we think the jury could have found that defendant benefited indirectly because of his status as a salaried officer and creditor of the union. Violation of the statute cannot be condoned simply because it is accomplished by indirect means. *Cf. United States v. Vitale*, 489 F.2d 1367, 1370 (6th Cir. 1974).

Other asserted errors in the charge are of insufficient merit to justify comment.

■ Appellant finally contends that a special "strike force" attorney is unauthorized to appear before a grand jury. His attempt to distinguish *In re Persico*, 522 F.2d 41 (2d Cir. 1975), because the crimes for which he was indicted did not involve racketeering or other "organized crime" activity, is without substance. We mention it only in the hope of finally laying this contention to rest.

The judgment of conviction is affirmed.