UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Lee PIGMAN,
Defendant-Appellant.

No. 75–3518.

United States Court of Appeals,
Fifth Circuit.

Feb. 3, 1977.

John G. Hyde, Midland, Tex. (Court appointed), for defendant-appellant.

John E. Clark, U. S. Atty., Wayne Speck, Ronald P. Guyer, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before GOLDBERG, SIMPSON and GEE, Circuit Judges.

SIMPSON, Circuit Judge:

Robert Lee Pigman was tried by a jury on four counts of violating federal narcotics statutes. He was found guilty on three counts: (1) knowingly manufacturing about 112 ounces of a Schedule V controlled substance containing codeine phosphate which purported to be Robitussin A–C, in violation of Title 21, U.S.C., Section 841(a)(1), [Count Three]; (2) knowingly and unlawfully possessing approximately 741 ounces of Robitussin A–C, a Schedule V controlled substance for other than medical purposes, in violation of Title 21, U.S.C., Section 844(a), [Count Five]; and (3) knowingly and unlawfully possessing a plate designed to print and reproduce the identifying packaging carton and label of Robitussin A–C, in violation of Title 21, U.S.C., Section 843(a)(5), [Count Four].

Pigman was sentenced by the court to two years confinement on Count Four, with eligibility for parole at such time as the Board of Parole may determine under the provisions of Title 18, U.S.C., Section 4208(a)(2). Appellant received a one year sentence on each of Counts Three and Five, to run concurrently with the term imposed under Count Four. In addition, the district court imposed a special parole term not to exceed one year.

Appellant Pigman presented no evidence or witnesses. Defense counsel rested at the close of the government's case and moved for a judgment of acquittal on the basis of insufficient evidence. The district court denied this motion. The issue on appeal is whether the evidence was sufficient to support any or either of Pigman's convictions.

In the early morning hours of October 23, 1974, members of the Midland, Texas Police Department executed a search warrant at

appellant's residence located at 3219 Travis Street, Midland, Texas.[1] The police officers seized a substantial quantity of bottled liquids, many of which were labeled as Robitussin cough syrup and Robitussin A–C cough syrup. Robitussin and Robitussin A–C are brand name cough syrups manufactured and marketed by the A. H. Robins Drug Company, Charlotte, North Carolina. Robitussin A–C contains codeine phosphate, a Schedule V controlled substance. The police officers also took possession of numerous empty four ounce bottles, printed labels and boxes bearing the Robitussin A–C inscription and markings, and various bottled, unlabeled liquids. The appellant, who was alone in the house prior to the search, was taken into custody by the officers subsequent to the search and seizure.

Testimony for the government showed these pertinent facts. For several years prior to appellant's arrest, a sales representative of the A. H. Robins Company, Chalmers Burke,[2] participated in an arrangement with a Dr. Gossett who was the County Medical Officer of Upton County, Texas. The representative would obtain quantities of Robitussin A–C from the doctor who ordered the drugs from the A. H. Robins Company. On several occasions, Pigman, both alone and in the company of the sales representative, obtained delivery of such drug shipments made by the A. H. Robins Company to Dr. Gossett. In 1973, he contracted with Latham Printing Company in Odessa, Texas, and Perry Printing Company of Midland, Texas, for the printing of several thousand labels and boxes bearing the Robitussin A–C name and markings.

Subsequent to his transfer to the custody of the Drug Enforcement Administration (DEA), Pigman accompanied a DEA agent to a warehouse and storage company in Midland, Texas, where 88 bottles of liquid and A. H. Robins boxes were recovered from a storage locker rented by the appellant. The locker was opened with appellant's consent.

Chemical analysis of the liquid substances taken from appellant's home and the storage locker established that some of the liquids were genuine Robitussin A–C and some were counterfeit. Appellant had no permission from the A. H. Robins Company to reproduce its brand name labels or its products.

■ Appellant's sole contention is that the evidence at trial was insufficient to sustain his convictions. He asserts, correctly, that the government's case was based largely on circumstantial evidence. "The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial . . . ." *United States v. Rousseau*, 5 Cir. 1976, 534 F.2d 584, 585. *See Holland v. United States*, 1954, 348 U.S. 121, 139–40, 75 S.Ct. 127, 137, 99 L.Ed. 150, 166. We examine the evidence in the light most favorable to the government. *Glasser v. United States*, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704; *United States v. Smith*, 5 Cir. 1975, 523 F.2d 771; *United States v. Warner*, 5 Cir. 1971, 441 F.2d 821, cert. denied 1971, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58. "All reasonable inferences and credibility choices as will support the jury's verdict of guilty must be made." *United States v. Black*, 5 Cir. 1974, 497 F.2d 1039, 1041. On review, the standard to be applied is whether "reasonable minds could conclude that the evidence is inconsistent with the hypothesis of the accused's innocence." *United States v. Warner, supra*, 441 F.2d at 825. The issue of appellant's guilt was for the jury to determine under these standards. We may not interfere with the verdict unless we determine that reasonably minded jurors should have entertained a reasonable doubt. *United States v. Smith, supra; United States v. Black, supra; United States v. Fontenot*, 5 Cir. 1973, 483 F.2d 315.

■ As to Count Three, we think the evidence was sufficient to sustain the jury's

---

1. No question was raised below either as to the sufficiency of the warrant and supporting affidavit, or the constitutionality of the search.

2. Burke was also indicted, but the charges against him were severed and set for later trial.

conclusion that appellant Pigman knowingly manufactured a Schedule V controlled substance purporting to be Robitussin A–C. Police officers found in appellant's residence not only ingredients[3] and a formula for manufacturing the counterfeit drug, but also the finished product.[4] Hundreds of unused counterfeit Robitussin A–C labels, empty counterfeit Robitussin A–C boxes, empty four ounce bottles, and A. H. Robins bottle caps were also found.[5] The defense presented no evidence. The jury was entitled reasonably and logically to conclude that the appellant knowingly manufactured a Schedule V controlled substance which purported to be Robitussin A–C.

■ We find further that there was sufficient evidence to convict appellant, under Count Five, for possession of a Schedule V controlled substance for other than medical purposes. Several gallons of genuine Robitussin A–C were discovered in appellant's residence at the time of his arrest. A government witness, Dr. Gossett, testified that Robitussin A–C is an expectorant and cough suppressant containing codeine, and usually sold in four ounce bottles. He stated that the general practice is to prescribe from four to eight ounces with a recommended dosage of one to two teaspoonfuls three or four times a day, depending on the patient's weight and size. Furthermore, he could envisage no situation in which a person would need a gallon of Robitussin A–C for his own legitimate medical use. As there was no evidence either contradicting appellant's possession of such quantities or establishing a legitimate medical reason for possession, a reasonably-minded jury could have logically concluded that the appellant was guilty as charged under Count Five.

■ We determine, however, that the government failed to prove Count Four, which charged possession of a plate designed to reproduce the identifying carton and label of Robitussin A–C, in violation of Title 21, U.S.C., § 843(a)(5). There was direct evidence that appellant Pigman possessed the negatives from which the plates were made. These negatives were entered into evidence at trial. While the government proved possession of the negatives, no evidence was offered to show that Pigman was in possession, either actual or constructive, of the printing plates. To the contrary, one of the printers testified that he made the plates from appellant's negatives, and then threw the plates away because they were no longer useful.[6] Pigman apparently never had any reason to take personal possession of the plates. He never asked for them. To have more labels made, if he wanted them, it would be simple to use the negatives. Since the government produced no evidence of his intention or ability to exercise dominion or control over the plates, constructive possession was not demonstrated.[7] See *Hale v. United States*, 5 Cir. 1969, 410 F.2d 147, cert. denied 396 U.S. 902, 90 S.Ct. 216, 24 L.Ed.2d 179. The government proved no more than that appellant had possession of the negatives. But he was not charged with that offense. We cannot let stand a verdict convicting him of possession of the plates based on proof of possession of the negatives. This would be tantamount to allowing the jury to speculate that appellant must have possessed the plates based on his possession of the negatives, an inference not supported by anything in evidence. Although it is clear from the evidence that Pigman went

---

**3.** Some of the ingredients found in appellant's home were also Schedule V controlled substances.

**4.** Glass bottles with Robitussin A–C labels containing a reddish liquid were determined, upon analysis, to be counterfeit Robitussin A–C.

**5.** Some of the boxes and four cases of Robitussin A–C in four ounce bottles were found in Pigman's storage locker at a warehouse in Midland, Texas. Appellant consented to the opening of the locker containing these items.

**6.** According to the printer's testimony, the plates are of no use unless they are cleaned and preserved. He stated that since it is simple to make other plates from the negatives, he threw the plates in question away.

**7.** Further, there was no evidence of a principal-agent relationship between the appellant and the printer.

to great lengths to reproduce wrongfully the identifying label and marks of the A. H. Robins Company, nevertheless, the grand jury indicted him for possession of the plates, a charge not sustained by the proof.[8] The conviction under Count Four is reversed.

■ The appellant's brief attacks his conviction and raises no questions as to the validity of the sentences. But we must deal with the manifest illegality present in the sentences imposed. The district court imposed a special parole term not to exceed one year to follow three concurrent prison terms.[9] But none of the statutory provisions under which this appellant was convicted and sentenced provide for imposition of a special parole term.[10] Upon remand, the appellant must be resentenced and the special parole terms vacated.

We reverse as to Count Four and affirm the convictions and sentences under Counts Three and Five, with directions to resentence eliminating the special parole terms previously provided for.

AFFIRMED IN PART; REVERSED IN PART; and Remanded with Directions.

---

8. Title 21, U.S.C., § 843(a)(5) reads:

(a) It shall be unlawful for any person knowingly or intentionally—

\* \* \* \* \* \*

(5) to make, distribute, or possess any punch, die, plate, stone, or other thing designed to print, imprint, or reproduce the trademark, trade name, or other identifying mark, imprint, or device of another or any likeness of any of the foregoing upon any drug or container or labeling thereof so as to render such drug a counterfeit substance.

Count Four read as follows:

1. On or about September 3, 1973, within the Western District of Texas, ROBERT LEE PIGMAN unlawfully, knowingly and intentionally, and without authorization, did possess a plate designed to print, imprint, and reproduce the identifying packaging carton and label of Robitussin A–C, a Schedule V controlled substance, so as to render any drug placed in such container a counterfeit substance, the said identifying packaging carton, and label being the trade name of A. H. Robins Company, a registered manufacturer of said drug.

2. On or before the date hereinabove alleged in the Western District of Texas, CHALMERS BURKE did aid, abet, counsel, induce, command and procure the aforesaid offense, in violation of 18 U.S.C. 2.

The conviction under this count would present no problem if in lieu of the language "did possess a plate designed to print, imprint, and reproduce", etc., the indictment had read: "did possess negatives designed to print, imprint and reproduce," etc.

9. Now two concurrent one year sentences, with the conviction under Count Four set aside.

10. See Title 21, U.S.C., Section 841(b)(3); Title 21, U.S.C., Section 844; Title 21, U.S.C., Section 843(c).