**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Richard NELL, Defendant-Appellant.**

**No. 77–5117.**

United States Court of Appeals, Fifth Circuit.

April 7, 1978.

---

P. D. Aiken, Fort Lauderdale, Fla., for defendant-appellant.

J. V. Eskenazi, U. S. Atty., Miami, Fla., William C. Brown, Atty., U. S. Dept. of Justice, T. George Gilinsky, Michael W. Farrell, Washington, D. C., for plaintiff-appellee.

Before WISDOM and GEE, Circuit Judges, and VAN PELT,* District Judge.

VAN PELT, Senior District Judge:

Richard Nell, former president of the International Union of Operating Engineers, Local 675, appeals his conviction by a jury on sixteen counts contained in two separate indictments relating to:

1) embezzlement and conversion of union funds by a union officer (in violation of 29 U.S.C. § 501(c));

2) racketeering (18 U.S.C. § 1961);

3) extortion (18 U.S.C. § 1951);

4) demanding, receiving and accepting money as a union official from employers (29 U.S.C. § 186); and

5) wilfully making false statements on his income tax returns for the years 1971 through 1974 (26 U.S.C. § 7206(1)).

Several of the issues raised on this appeal stem from the fact that this trial involved the consolidation of the two indictments. For simplicity, we will refer to them as Indictment 1 and Indictment 2.

Indictment 1 was originally filed July 24, 1974, and charged Nell in seven counts with embezzlement or conversion to his own use of union funds. Indictment 1 was tried in October of 1974. Nell was convicted by a jury on five counts, the court having granted an acquittal as to two counts prior to submission to the jury. The conviction was overturned on appeal to this Circuit. *United States v. Nell*, 526 F.2d 1223 (5th Cir. 1976). The panel found the evidence sufficient to support each of the embezzlement convictions, but found reversible error in the selection of the jury. After denial of a rehearing, the mandate of this court issued April 15, and was filed with the district court on April 19, 1976. Indictment 1, by order of the clerk dated April 20 and filed April 21, was set for criminal jury trial for June 1, 1976 "or as soon thereafter as the case may be heard," with the notation on the order that a calendar call would be held June 1, 1976 at 9 a. m. R. Vol. 2, at 272. On May 5, 1976 Indictment 2, charging Nell with thirteen new counts [1] relating to racketeering, extortion, and false statements on tax returns, was returned by the grand jury and filed with the clerk of the district court. The two indictments were assigned to different judges. The United States, on May 5, and defendant, on May 11, filed motions for consolidation. Defendant's motion was denied. The government on May 21 filed a motion to reconsider consolidation and thereafter consolidation was ordered.

On appeal, Nell contends that:

1) The trial court erred in failing to dismiss Indictment 2 claiming that appellant had been penalized for successfully appealing his conviction under Indictment 1;

2) The sentence imposed on appellant under counts 6 and 7 of Indictment 1 is illegal because it constitutes a more severe sentence on retrial after a successful appeal;

3) The evidence was insufficient to convict him and the trial court erred in denying his motion for judgment of acquittal on the following counts:

a) Counts 8 through 11 of Indictment 2 relating to wilfully making and subscribing false tax returns for the years 1971 through 1974 because venue was not established;

b) Count 2 of Indictment 1 relating to expenditure of union funds for personal legal fees incurred in erasing a 1932 criminal conviction;

c) Counts 2, 4, and 6 of Indictment 2 relating to separate acts of extorting money from three contractors because the necessary elements of extortion were not shown;

4) The trial court erred in allowing appellant's testimony to be read from the original 1974 trial under Indictment 1 and that the trial court abused its

---

* Senior District Judge of the District of Nebraska, sitting by designation.

1. Counts 12 and 13 were dismissed on the government's motion prior to trial.

discretion by failing to grant severance.

We affirm.

## I. THE SECOND INDICTMENT

■ Relying on *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) and *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), appellant alleges that the filing of Indictment 2, after his successful appeal from the 1974 trial on Indictment 1, shows prosecutorial vindictiveness. Appellant contends that the government "upped the ante" by charging him with new counts carrying a stiffer penalty based on "all of the very same acts charged in the first case." Appellant's brief at 16. *Blackledge, supra,* held that, after a person convicted of a misdemeanor filed an appeal for a trial de novo, the state could not file another indictment charging the same criminal act as a felony because it violated the Due Process Clause of the Fourteenth Amendment. The Supreme Court reached this result even though there was no evidence of bad faith on the part of the prosecutor.

It is true that some (but not all) of the counts in the second indictment reiterated the embezzlement acts charged in the first indictment. Count 1 of the second indictment alleged a pattern of racketeering on the part of appellant and listed the same five acts of embezzlement for which appellant was convicted under Indictment 1 and on which he was retried and again found guilty.[2] However, in addition, the racketeering count alleged eight new acts of extortion and receipt of moneys as a union official. Counts 8 through 11 of Indictment 2 concerned false statements on income tax returns. The embezzlement acts from Indictment 1 were an integral part of these tax counts because appellant had received moneys from the union which he had not reported as income. However, the income tax counts also relied upon evidence that Nell had received extortion money from contractors which he never reported as income. Thus, all of the 13 counts in the second indictment had an additional factual basis not found in Indictment 1.

*Blackledge* indicated there would be nothing improper with a later filing of increased charges if the state prosecutor had shown that it was impossible to proceed on the more serious charge right from the beginning. *Id.* at 29, n. 7, 94 S.Ct. 2098. This was recently explored in *Hardwick v. Doolittle,* 558 F.2d 292 (5th Cir. 1977), *cert. denied,* —— U.S. ——, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978), where it was stated:

An increase in the severity or number of charges if done without vindictiveness may be easily explained. For example, evidence of the additional crimes may not have been obtained until after the first indictment or information is filed, or the additional crime may not be complete at the time charges are first brought. And a prosecutor may, without explanation, refile charges against a defendant whose bargained-for guilty plea to a lesser charge has been withdrawn or overturned on appeal, provided that an increase in the charges is within the limits set by the original indictment. Other explanations which would negate vindictiveness could include mistake or oversight in the initial action, a different approach to prosecutorial duty by the successor prosecutor, or public demand for prosecution on the additional crimes allegedly committed. The list is intended to be illustrative rather than exhaustive. While Hardwick has made a prima facie case by showing that the number of crimes charged against him as a result of this episode was doubled after he had succeeded in setting aside the original convictions, the prosecutor may rebut this prima facie proof by establishing his reasons for adding the two new charges were other than to pun-

---

**2.** The government chose not to retry Nell on the two counts on which he had been acquitted during the 1974 trial.

ish a pesky defendant for exercising his legal rights.

*Id.* at 301 (footnotes omitted).

Nell was still under investigation for other crimes when the first indictment was filed. Nell was aware that he faced additional charges. Prior to the 1974 trial, Nell filed a Motion to Quash Internal Revenue Service Administrative Summons/Motion for Temporary Restraining Order/Motion for Protective Order. This motion alleged that a witness whom Nell planned to use in his criminal trial had been served an Internal Revenue summons. The motion further stated that the information sought by the Internal Revenue Service related to the same items that were in the criminal indictment and that a request had been made to the I.R.S. to stay the tax investigation until after the criminal case had been tried. R. Vol. 2, at 17. Defense counsel later filed a Motion to Withdraw the above motion, explaining that the matter had been satisfactorily resolved with the I.R.S. Thus, it is clear that the government continued its attempt to obtain information relating to the tax counts after the first indictment was originally filed. It is also clear that the government was pursuing the evidence of extortion, which was a basis for all 13 counts of the second indictment, long after the first indictment was returned. In preparation of the second indictment, statements were taken from witnesses from July 10, 1974 through April 26, 1976. Indictment 2 was returned May 5, 1976. It grew out of an extensive investigation which was started long before Nell took his appeal from the 1974 trial. Therefore, although Nell made a prima facie case by showing the second indictment was filed soon after the notice of retrial and included the identical acts in some counts, we conclude the government has adequately shown valid reasons for the delay in filing Indictment 2. We find no error in failing to dismiss the second indictment.

## II. SENTENCING UPON RETRIAL [3]

■ Under *Pearce, supra,* a judge may impose a more severe sentence after a new trial if the reasons for doing so affirmatively appear. The reasons must be based on "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Id.* 395 U.S. at 726, 89 S.Ct. at 2081. Vindictiveness against the defendant for having successfully attacked his first conviction must play no part in the second sentence.

Appellant contended in his brief that he received a more severe sentence on Counts 6 and 7 of Indictment 1 at retrial. At the 1974 trial, the court sentenced Nell to three years on Counts 1, 2 and 4 and five years on Counts 6 and 7. The sentence was suspended on Counts 6 and 7 and the defendant was placed on probation for five years. The sentence on all counts was to run concurrently. This meant if Nell committed a crime after serving his time on the first three counts, he could serve additional time if it was found that he violated his probation. At the retrial, Nell was sentenced to three years on each of the five embezzlement counts, the sentences to run concurrently. In actuality, he received a lesser sentence, as counsel conceded at oral argument.[4]

---

**3.** As a part of the first issue, Nell also argued that his 1976 sentence was more severe than the one imposed in 1974 because he received a five year sentence on the racketeering count and two years on each of the income tax counts. Those sentences ran concurrently with one another but consecutively with the sentence imposed on each of the five embezzlement counts. Finding the indictment was based on new evidence and information not obtained until after the first indictment was filed, we can only conclude that appellant was not being sentenced twice for the same offense when the court sentenced him on the racketeering and tax counts in addition to the embezzlement counts.

**4.** Counsel was asked the following question during oral argument and responded as follows:

Q. The second case [the retrial] makes no difference to you though, does it, if the Counts 1, 2 and 4 were affirmed. Then you're in the same position under the concurrent sentence doctrine.

A. Actually, I might be better off if the, if there is an affirmation on 1, 2 and 4, then I

## III.  VENUE AND THE TAX COUNTS

■ Appellant was charged in Counts 8 through 11 of Indictment 2 with violating 26 U.S.C. § 7206 which provides:

Any person who

(1) Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter

\*    \*    \*    \*    \*    \*

shall be guilty of a felony  .  .  . .

Both indictments were returned and the cases were tried in the Southern District of Florida.  Venue lies either where the tax return was made and subscribed or where it was filed.  *United States v. Lawhon*, 499 F.2d 352, 355 (5th Cir. 1974), *cert. denied*, 419 U.S. 1121, 95 S.Ct. 804, 42 L.Ed.2d 820 (1975).  Appellant contends that since there was no evidence establishing where the returns for 1971 through 1974 were made or filed, venue to try the tax counts in the Southern District was not established.

■ It is true that the government's Internal Revenue Service witness testified that he did not know where the returns were filed or where they were signed.  However, this Circuit has stated previously that: "The absence of direct proof of venue will ·not defeat conviction when inferences of venue may properly be drawn from circumstantial evidence."  *United States v. Graves*, 428 F.2d 196 (5th Cir.), *cert. denied*, 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970).

The trial judge denied appellant's motion for judgment of acquittal on these counts because he believed that there were sufficient inferences to show the tax returns were made and subscribed by Nell in the Southern District of Florida.  The tax returns themselves showed Nell's residence in the Southern District, where both Nell and his wife worked.  The business address of the accountant who prepared the returns for appellant was in the Southern District of Florida.  The trial court also noted that the testimony of all witnesses placed Nell in the Southern District.  The alleged crimes involved in the other counts for which defendant was found guilty were also alleged to have taken place in the Southern District.  We believe there was sufficient evidence to support the trial judge's finding of venue and that error does not exist in so ruling.

## IV.  SUFFICIENCY OF EVIDENCE ON EMBEZZLEMENT OF ATTORNEY'S FEES

Count 2 of Indictment 1 alleged that Nell used union money to pay his personal attorney's fees incurred in overturning a 1932 felony conviction.[5]  The 1932 conviction occurred when Nell was 17 years old and was not in any way union related.

Appellant concedes that a union may not expend union funds to defend its members charged with criminal acts, and that the checks paying the attorney's fees were drawn on the union's only bank account.  His theory is that the money was taken not from union funds but from a "criminal defense fund" established when the union members voluntarily donated one day's pay.

would be better off to let it run concurrent because then I would be eliminating the probation.  What in essence I'm asking the court to do is to overturn the entire thing so I'm making my argument as to the entirety.  In the alternative, if I lose, I am better off.

Appellant has not challenged the sufficiency of the evidence on the embezzlement counts.  We find no error during the retrial which could possibly have affected the validity of the embezzlement counts.

**5.**  Nell argued it was necessary to overturn the 1932 conviction so he could testify (without having been convicted of a felony) in another trial where he and two other union members were charged with bribing a county official.  Neither indictment alleged union funds were used to pay a personal attorney's fee in connection with the bribery trial, although Nell stated while under cross-examination at the first trial that the bribery charge arose because he made a "personal campaign contribution" to a county commissioner—which would seem non-union related.

Although the money was commingled in the union's general checking account, it was accounted for separately on the union books as a voluntary assessment.

We need not pass on this issue under the concurrent sentence doctrine. *United States v. Brown*, 548 F.2d 1194, 1208 n. 31 (5th Cir. 1977); *United States v. Bigham*, 421 F.2d 1344, 1346 (5th Cir.), *cert. denied*, 400 U.S. 818, 91 S.Ct. 34, 27 L.Ed.2d 45 (1976). Nell received identical concurrent sentences under all five embezzlement counts, four of which are not challenged here.

▎ If we look to the merits, and if the evidence is considered in a light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the evidence is more than adequate to sustain the verdict. The money for overturning the 1932 conviction was paid out of the union's general account. There was no way of distinguishing whether the money came out of the voluntary assessment or other union funds. The union had set up special accounts for other funds and not commingled those moneys with general account moneys. They could have done the same here if the voluntary assessment was not to be considered a part of the union treasury. When the union established a special account in 1973 to pay for legal fees, none of the voluntary assessment from 1970 was transferred to it. Furthermore, the bookkeeper testified the assessment money was never used for anything in particular. In addition, there was Nell's testimony from the first trial (which was received in evidence at the second trial), in which Nell testified on cross-examination that the money spent to erase the 1932 conviction was paid out of union funds. In light of all this, it would be difficult to understand how the jury could arrive at any other verdict. We find the evidence sufficient to support the conviction on this count.

## V. SUFFICIENCY OF THE EVIDENCE ON THE EXTORTION COUNTS

▎ Nell was convicted of extorting money from three different contractors in violation of 18 U.S.C. § 1951.[6] On appeal, he contends the evidence was not sufficient to support the guilty verdicts on the extortion counts and in fact as to the counts relating to Sessa and Caporella he contends the evidence showed bribery and not extortion. Again viewing the evidence in the light most favorable to the government, *Glasser, supra*, we have no difficulty finding proof of the elements of extortion.

A brief review of the evidence will suffice. Wade Nelson, Ralph Sessa, and Nicholas Caporella were all contractors. Nelson provided crane rental for high and low rise construction; he had a contract with Nell's union. However, Nell's son was part-owner in a similar business, and Nell regularly told Nelson not to bid on certain jobs. Once when he did bid on a job against Nell's advice, a crane of his was destroyed shortly thereafter. When Nell requested $10,000 in cash some time later, Nelson provided it. Nelson was subpoenaed to testify at the trial. He answered questions reluctantly.[7]

---

**6.** 18 U.S.C. § 1951 (also referred to as the Hobbs Act), provides in relevant part:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(b) As used in this section—

\* \* \* \* \* \*

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

**7.** Q. Why did you give Mr. Nell this cash?
A. He had some legal problems going on at the time that—
Q. Well, what was your reason?
A. I don't quite understand what you mean.
Q. In other words, what was your reason for giving Mr. Nell that money?
A. That's hard to answer.
THE COURT: Try.

He did finally admit that he was afraid of Nell economically, and that Nell could hurt a person's business.

Caporella had a contract with the Operating Engineers from approximately 1968 through June of 1972. He had experienced damage to his equipment during this time. Caporella had at least two private conversations with Nell leading to the payment of extortion money to Nell. In the first conversation, Caporella told Nell he no longer wished to be union and was planning on selling the company to a non-union company. Shortly afterwards, Caporella had a brand new uninsured machine destroyed. At the second discussion, Nell said that Caporella would be getting rich from the sale of the company, and wanted to know what was "in it" for him. Sessa also planned to sell to the same non-union company, and was also experiencing vandalism to his equipment. Caporella and Sessa met with Nell. Nell demanded $20,000 to take care of their problems. Both Sessa and Caporella paid Nell $2,500 apiece at the time of this conversation, and other payments were made later. Sessa testified he paid the money because he was scared of Nell. Caporella testified he paid the money because he feared damage to his equipment and personnel and "most of all I was frightened for my family." R. Vol. 13, at 1377. Both men indicated they had heard of Nell's reputation and mentioned the damage to equipment, although neither could specifically link Nell to the equipment damage.[8]

THE WITNESS: Well probably not to have any trouble with the Union or whatever. I don't know.
BY MR. STEINBERG:
Q. Do you or don't you know, Mr. Nelson? You gave him the money; did you have any cranes working at that time?
A. Yes, I did.
Q. How many?
A. Fifty, sixty.
Q. Did that have anything to do with your giving Mr. Nell the money?
A. Yes, it did.
Q. Why.
A. I had a lot of friends working.
Q. Are you nervous today?
A. Yes, I am.
Q. Are you afraid?
A. No.

The outcome of this issue does not depend upon whether Nell was in fact responsible for the damage to cranes and heavy equipment of the type operated by men in his union. In order to convict under the Hobbs Act, the government need only show that the person receiving the money had no lawful claim to it and the person doing business in interstate commerce made the payment out of fear. *United States v. Enmons*, 410 U.S. 396, 399–400, 93 S.Ct. 1007, 1008–09, 35 L.Ed.2d 379, 382–83 (1973); *United States v. Quinn*, 514 F.2d 1250, 1256 (5th Cir. 1975), *cert. denied*, 424 U.S. 955, 96 S.Ct. 1430, 47 L.Ed.2d 361 (1976). All of these elements are present. It was stipulated that the contractors were doing business in interstate commerce. Reading the typewritten testimony, without the benefit of seeing and hearing the witnesses, the contractors' fear is still obvious. Sessa, Caporella, and Nelson were not willing government witnesses. Nell had no legal claim to the payments he received. The jury was entitled to disbelieve appellant's theory that these were loans or were bribes willingly given. The *Quinn* opinion succinctly states the law applicable to this case:

In a prosecution of this kind it is not necessary that the government prove that the fear was a consequence of a direct threat. Rather, it is sufficient if the government can show circumstances surrounding the alleged extortion which render the victim's fear reasonable. Fear of

Q. Were you afraid of Mr. Nell at the time you gave him the money?
A. Physically, no.
Q. Well, in any other respect?
A. Probably economically.
Q. Did you know anything about Mr. Nell's reputation?
A. Yes, he had a reputation.
Q. What did you know about his reputation at the time you paid him the money?
A. He could hurt your business a lot.
R. Vol. 13, at 1282–84.

8. The reputation of a defendant may convey a tacit threat of violence. *See United States v. Billingsley*, 474 F.2d 63, 66 (6th Cir.), *cert. denied*, 414 U.S. 819, 94 S.Ct. 42, 38 L.Ed.2d 51 (1973).

economic loss is a type of fear proscribed by part (b)(2) of the Hobbs Act.

*Id.* at 1266–67 (footnotes omitted). The evidence to support the verdicts on the extortion counts is substantial.

## VI. NELL'S PRIOR TESTIMONY AND THE MOTION FOR SEVERANCE

As noted earlier, the retrial on Indictment ·1 and the trial on Indictment 2 were scheduled to take place before two different judges. Defendant filed a motion on May 11, 1976 in Judge King's court (where Indictment 2 was filed) requesting consolidation of the two indictments but stating that:

> The Defendant by making this motion does not waive any rights with respect to the prejudicial misjoinder of offenses with respect to the extortion counts and/or racketeering count.

R. Vol. 1, at 21. Judge King denied the motion. On May 21, 1976, the government filed in Judge King's court a Motion to Reconsider Consolidation of Indictments and filed as an Exhibit a copy of the Motion to Join Indictments which had been filed earlier by the government in Judge Roettger's court. The cases were ultimately consolidated.

Prior to the second trial, defense counsel raised the question of whether Nell's testimony at the first trial would be admissible. Counsel argued it was inadmissible because the first trial was tainted not only by the jury selection process but by other evidentiary rulings. Counsel argued he was forced to put his client on the stand in that case, and that he did not intend to do so here. The court at that time ruled that he felt the testimony would be admissible, stating "so you will be guided accordingly." R. Vol. 9, at 18–19. At the point where the government wanted to introduce the transcript of Nell's testimony, the issue was again raised. A discussion ensued as to the claim that the testimony from the first trial was also relevant to the racketeering count and the tax counts since the same acts were involved. Counsel moved at that time for a severance of the embezzlement counts.

This was denied, and the trial court again ruled that Nell's testimony from the first trial would be received in evidence in the government's case-in-chief.

■ Appellant complains of these rulings. One need look no further than the previous opinion in this case to find the answers to appellant's argument. In *United States v. Nell*, 526 F.2d 1223, 1231 (5th Cir. 1976), the question of whether a severance should have been granted was also raised. In reviewing the law, we held that granting a severance is within the discretion of the trial judge, and that the defendant bears a heavy burden of showing clear prejudice. *See United States v. Miller*, 513 F.2d 791, 793 (5th Cir. 1975); *United States v. Lane*, 465 F.2d 408, 413–14 (5th Cir. 1972); *Tillman v. United States*, 406 F.2d 930 (5th Cir.), *vacated in part*, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969). The law has not changed since appellant's last appeal. We fail to find prejudice to appellant. Counsel had requested consolidation prior to trial. Counsel knew prior to the start of the trial that the court intended to admit Nell's prior testimony. Counsel then waited until the government had called 14 witnesses before making a motion for severance. Under the circumstances, we find no abuse of discretion by the trial court in denying the severance.

■ Additionally, we conclude Nell's prior testimony was admissible. *Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968) recognized the general rule that:

> [A] defendant's testimony at a former trial is admissible in evidence against him in later proceedings. A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him.

*Id.* at 222, 88 S.Ct. at 2010. *Harrison* reversed a defendant's conviction where the

introduction of unlawful evidence raised an inference that defendant was motivated to take the stand because of it. Appellant has not claimed in this court that he was motivated to take the stand because of any illegally obtained evidence that was introduced. While it is easy to assume that a defendant may feel compelled to rebut illegally obtained evidence and testify, we find it unlikely that a defendant would feel compelled to testify where, as here, the only reversible error in the original trial was that he was required to use two peremptory challenges during the jury selection process when the jurors either should have been questioned further by the court or stricken for cause. Counsel cites no authority in support of the proposition that the jury selection process tainted the entire trial, and we find none. Furthermore, the testimony from the first trial was quite relevant as to the embezzlement acts and the racketeering and tax counts. We conclude the denial of the severance and the admission of the prior testimony was proper.

The judgment and sentence is affirmed in all respects.